IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEFFREY PATTERSON )<br>)<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>METRO GENERAL HOSPITAL AUTHORITY,)<br>et al., )<br>)<br>)<br>    Defendants. ) | Case No.: 3:08-CV-00493<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the Magistrate Judge's Report and Recommendation ("R&R") (Docket No. 114), which makes a recommendation as to the disposition of the pending Motion to Dismiss (Docket No. 71) filed by defendant Lee Miller, Warden of the Northeast Correctional Facility Center ("NECX").[1] The plaintiff, Jeffrey Patterson, has filed a timely objection to the R&R. (Docket No. 116.) For the reasons discussed herein, these objections will be overruled and the defendant's motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Jeffrey Patterson, seeks damages in this case based upon alleged violations

---

[1] On December 11, 2009, the Magistrate Judge issued another R&R that recommended granting defendant Metropolitan General Hospital Authority's Motion for Judgment on the Pleadings (Docket No. 115). No objections have been filed to this R&R. Therefore, this R&R will be accepted and made the findings of fact and conclusions of law of this court. There are also various other motions currently pending before Judge Knowles, some of which will become moot following this Memorandum. (Docket Nos. 102 and 120.)

1

of his constitutional rights, which occurred due to the allegedly poor provision of medical treatment during his incarceration at NECX.[2]

In June 2005, while incarcerated at West Tennessee State Prison in Henning, Tennessee, Patterson was diagnosed with Hepatitis C.[3] At the time, Patterson was not informed of the nature of his condition, nor of its long-term implications. Moreover, he was not provided with medical treatment to address his condition, and he was not advised of the consequences of non-treatment. However, Patterson was told that, at some unstated future time, he would begin receiving treatment.

Beginning in March 2006, Patterson was transferred between numerous Tennessee facilities, and, ultimately, in April 2007, he was transferred to NECX in Mountain City, Tennessee. Upon his arrival at the facility, Patterson met with the medical treatment staff, informing them that he had been previously diagnosed with Hepatitis C, but that he had not yet received treatment for his condition. Patterson further informed the staff that he desired and needed treatment. Apparently, however, Patterson was not provided with any immediate treatment, and, therefore, he filed numerous grievances with the NECX medical staff between April 2007 and January 2008.

Presumably because of these grievances, in January 2008, Patterson was sent to the Lois Deberry Special Needs Facility ("DSNF") in Nashville, Tennessee for inpatient care. During the

---

[2] Unless otherwise stated, the facts are drawn from the plaintiff's First Amended Complaint. (Docket No. 70.)

[3] As of the filing of his First Amended Complaint, Patterson is suffering from Stage Two Hepatitis C, resulting in fibrosis and cirrhosis of the liver, conditions that can lead to liver failure.

course of his stay at DSNF, he was sent to Meharry Medical Center for a liver biopsy. Dr. Michael Bucholz performed the biopsy; however, rather than removing a portion of Patterson's liver, Dr. Bucholz removed part of Patterson's kidney, causing Patterson "excruciating pain." A successful liver biopsy was performed two weeks later, after which Patterson remained at DSNF for one month. Before being transferred back to NECX, Patterson was informed that he would begin treatment at NECX, which would include prescription drugs and "living conditions adjustments." Despite this promise, however, Patterson did not receive medical treatment upon returning to NECX.[4]

On May 6, 2008, the plaintiff, proceeding *pro se*, filed this lawsuit, alleging that various defendants violated his constitutional rights under the Eighth and Fourteenth Amendments and seeking damages pursuant to 42 U.S.C. § 1983. (Docket No. 1.) The case was referred to the Magistrate Judge, and, on July 29, 2008, Defendant Miller filed an initial Motion to Dismiss. (Docket No. 18.) On September 30, 2008, Magistrate Judge Knowles submitted an R&R (Docket No. 36), recommending that Miller's motion be granted, and, over Patterson's objections, the R&R was adopted. (Docket No. 49.)

On October 27, 2008, Patterson moved for the Appointment of Counsel, on the basis of his indigence, low education level, and inability to receive further legal aid from the prison's

---

[4] Patterson alleges that, following his return to NECX and after filing numerous requests for medical attention and grievances, he was allowed to meet with Dr. Williams [first name not provided]. Dr. Williams informed Patterson of "rudimentary facts about the nature of his conditions and the treatments prescribed by the treating physicians in Nashville." (Docket No. 70 at 4.) However, Dr. Williams told Patterson that, despite both the importance of treatment and the history of the plaintiff's efforts to obtain treatment, he would not order the treatment for Patterson. When Patterson inquired about the specific symptoms and conditions he was experiencing, Dr. Williams allegedly "became angry and ordered [Patterson] to leave his office immediately, without further explanation." (*Id.* at 5.)

3

paralegal. (Docket No. 45.) On November 5, 2008, Patterson was appointed counsel. (Docket No. 54.) Patterson filed a First Amended Complaint on March 31, 2009, again naming Miller as a defendant. (Docket No. 70.) The First Amended Complaint specifically discusses Miller only once; that is, it names Miller as a defendant and states that Miller is the "director of all operations and personnel at the NECX."[5] (*See* Docket No. 70 at ¶ 6.)

Defendant Miller filed the pending Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a supporting Memorandum of Law on April 14, 2009, arguing primarily that *respondeat superior* is not a basis for imposing liability under § 1983. (Docket Nos. 71 and 72.) In response, the plaintiff argued that the facts "clearly state a cause of action for 42 U.S.C. § 1983 under the danger creation doctrine." (Docket No. 83 at 2.)

On December 3, 2009, Magistrate Judge Knowles issued the pending R&R, recommending that the defendant's motion be granted and that the plaintiff's claims against Defendant Miller be dismissed. (Docket No. 114 at 5.) Judge Knowles concluded that the plaintiff had not stated a claim against Defendant Miller under the "state created danger" doctrine, as the plaintiff failed to "demonstrate that Defendant Miller either created or increased the risk that [Patterson] would be exposed to an act of violence by a third party." (*Id*. at 4.) Judge Knowles also concluded that Defendant Miller could not be liable to Patterson on the theory that Patterson's grievances and appeals to NECX personnel were denied, as "[s]upervisory liability does not arise from the failure to act upon information contained in a grievance or the denial of a grievance." (*Id*.) As noted above, the plaintiff filed a timely

---

[5] The First Amended Complaint also contains broad allegations against "all defendants," (Docket No. 70 at ¶¶ 20-22), and incorporates the plaintiff's *pro se* Complaint, which attached several of the grievances that the plaintiff had filed at NECX. (*See* Docket No. 1 Ex. 1.)

4

objection to the R&R. (Docket No. 116.)

## ANALYSIS

**I. Standard of Review**

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the court is required to make a *de novo* determination of any part of the Magistrate Judge's R&R to which a specific objection has been made. The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead,

5

the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

**II. Objections to the R&R**

In his objection to the R&R, the plaintiff argues (1) that the First Amended Complaint pleads sufficient facts to assert a "state created danger" claim; and (2) that the First Amended Complaint establishes that Miller had a direct role in violating the plaintiff's constitutional rights; that is, that Miller's liability is premised on more than *respondeat superior*. (Docket No. 116 at 6, 8.)

**A. State-Created Danger Doctrine**

In the R&R, Judge Knowles concluded that the plaintiff failed to allege facts sufficient to state a claim under the "state created danger doctrine." (Docket No. 114 at 4.) Judge Knowles wrote that the plaintiff could not "demonstrate that Defendant Miller either created or increased the risk that [the p]laintiff would be exposed to an act of violence by a third party," and he thus determined that the "state created danger" claim against Miller failed. (*Id*.)

In objecting to this conclusion, the plaintiff argues that the "state created danger" doctrine should be applied to Miller because Miller, through his supervision of the NECX administration, took "affirmative acts" that placed the plaintiff at substantial risk of "serious, immediate and proximate harm" due to the continued deterioration of his health. (Docket No. 116 at 5-6.) At this stage, the plaintiff contends that these "affirmative acts" are demonstrated by three documents: (1) an NECX response [not signed by Miller] to a grievance that the plaintiff filed; the response addresses the improperly performed biopsy and informs the plaintiff that

6

malpractice [as discussed in the plaintiff's grievance] "is a legal issue that must be addressed through the court system"; (2) an NECX response [signed by Miller] to an emergency grievance that the plaintiff filed; the response states that, pending a consultation with the NECX Health Administrator, the plaintiff would be transferred to the DNSF for a liver biopsy[6]; and (3) an NECX Memorandum from Miller to the Chairperson of the Inmate Grievance Committee that informs the Chairperson that Patterson's emergency grievance was not a "Title VI Grievance."[7] (*Id*. at 6 citing Docket No. 1 Ex. A at 9, 15, and 17.))

This objection will be overruled. Judge Knowles accurately concluded the plaintiff cannot sustain a claim under the "state created danger" doctrine. The "state created danger" doctrine is an exception to the general rule that "the Due Process Clause [] does not impose affirmative duties on the state to protect the interest of individuals." *Brooks v. Knapp*, 221 F. App'x 402, 406 (6th Cir. 2007) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989)). As discussed by Judge Knowles, in order to establish a "state created danger" claim in the Sixth Circuit, an individual must establish:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998)). The "state created danger" exception applies to cases in which "the state either plays a role in creating a danger to an individual or renders an

---

[6] The emergency grievance filed by Patterson made it clear that the successful biopsy had already been conducted. (Docket No. 1 Ex. 1 at 14.)

[7] It is not stated what a "Title VI Grievance" means in this context.

7

individual more vulnerable to the danger." *Brooks*, 221 F. App'x at 406.

To be liable under the "state created danger" doctrine, the state actor must take an "affirmative action," and a failure to act will not result in liability. *Cartwright*, 336 F.3d at 493. The question thus becomes whether the state actor "did anything 'affirmative' to 'embolden' the person causing harm to another." *Brooks*, 221 F. App'x at 407; *see also Cartwright*, 336 F.3d at 493-94 (failure of police officers to detain an intoxicated man after driving him from a dark road to a convenience store is not an "affirmative act"); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994) (failure of police officers to rescue a kidnap victim and lying to the victim's family about the case was not an "affirmative act"); *but see Kallstrom*, 136 F.3d at 1066 (releasing private information about undercover policemen to criminal defendants who were members of a large and violent gang was an "affirmative act"). As the *Cartwright* court stated, the primary inquiry is whether the plaintiff was safer "*before* the state action than he was *after* it." *Cartwright*, 336 F.3d at 493 (emphasis in original); *see also DeShaney*, 489 U.S. at 201 (the state "placed [the victim] in no worse position than that in which he would have been had [the state] not acted at all").

There is nothing in the plaintiff's First Amended Complaint to suggest that Miller took any affirmative action that placed Patterson at risk for injury or harm by a private third party, such as one of the doctors who treated Patterson. As noted above, the First Amended Complaint itself does nothing more than allege that Miller is the director of operations at NECX. Beyond that, in the stack of grievances and other materials that were attached to the plaintiff's *pro se* Complaint are two documents (discussed above) that indicate (1) that Miller had mistakenly and untimely advised the plaintiff that he would be in line for a liver biopsy and (2) that Miller had

8

concluded that one of the plaintiff's grievances was not a "Title VI" Grievance. At most, the First Amended Complaint and these attachments suggest that Miller failed to closely monitor the plaintiff's situation or aggressively respond to the plaintiff's requests for medical intervention. However, Miller's failure to aggressively pursue medical care for the plaintiff was clearly not an affirmative act, and it placed Patterson in "no worse position than that in which he would have been," had Miller not been involved at all. *See DeShaney*, 489 U.S. at 201. Thus, with respect to the "state created danger" exception, Judge Knowles's R&R will be adopted.[8]

### B. Miller's Direct Role

In the R&R, Judge Knowles also concluded that the plaintiff otherwise failed to allege facts sufficient to state a claim against Miller for constitutional violations under the Eighth and Fourteenth Amendments, as the First Amended Complaint "fails to allege any specific action taken personally by Defendant Miller," and because "[s]upervisory liability does not arise from the failure to act upon information contained in a grievance or the denial of a grievance." (Docket No. 114 at 4.)

In objecting to this conclusion, the plaintiff argues that the First Amended Complaint is not based on "*[r]espondeat [s]uperior* liability alone." (Docket No. 116 at 4) (emphasis added.) Rather, the plaintiff asserts that liability is premised on the fact that Miller "deliberately ignored valid medical conditions and needs for treatment of the plaintiff." (Docket No. 116 at 8 (citing

---

[8] In support of his argument, the plaintiff cites *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir. 2001). The reliance on this case to assert a claim of "state created danger" is misplaced, as the case discusses the standard as it exists within the Tenth Circuit, rather than addressing the applicable Sixth Circuit standard. Nonetheless, under the *Currier* standard, the plaintiff would still be unable to state a claim under the "state created danger" doctrine because the plaintiff has not pled sufficient facts to show that Miller affirmatively acted in a manner that created a danger to Patterson from a third party. *See Currier*, 242 F.3d at 918.

9

Docket No. 70 at ¶ 20).)  This objection will be overruled.

In this context, a prisoner properly states a claim under Section 1983 when he "alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)).  The prisoner must plead sufficient facts to show: (1) that the medical need is "sufficiently serious"; and (2) that the prison official had a "sufficiently culpable state of mind" in refusing treatment. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The prisoner's claim will be insufficient, however, where it is based upon *respondeat superior*; that is:

> a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).  Thus, a constitutional violation "must be based upon active unconstitutional behavior and cannot be based upon a 'mere failure to act.'" *Id.* (quoting *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)); *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) (holding that the plaintiff must allege *specific acts* attributable to the defendant); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (holding that a supervisor's awareness of a potential constitutional violation, and the failure to remedy that violation, is insufficient to impose liability on the supervisor).

Again, the First Amended Complaint itself fails to allege any action specifically taken by

10

Miller, and the two exhibits to the *pro se* Complaint certainly do not show Miller "den[ying] reasonable requests for medical treatment in the face of an obvious need." In short, the First Amended Complaint fails to show any "active unconstitutional behavior" by Miller. *See Shehee*, 199 F. 3d at 300.[9] Also, while the First Amended Complaint sets forth broad allegations against "all named party defendants," claiming that each defendant "deliberately ignor[ed] the valid medical conditions and needs for treatment that the plaintiff had been requesting,"(Docket No. 70 ¶ 20), these allegations are not sufficient, as a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" does not state a claim. *Ashcroft*, 129 S. Ct. at 1949-50.

## **CONCLUSION**

For the reasons discussed herein, the plaintiff's R&R objections will be overruled, and the decision recommended by Judge Knowles in the R&R will stand. The defendant's motion to dismiss will be granted.

An appropriate order will enter.

                                                         _____
                                                         ALETA A. TRAUGER
                                                         United States District Judge

---

[9] In his objections, the plaintiff also states that he filed grievances that "appear to have gone to a Department Supervisor that Lee Miller directed and to whom he had previously given directions regarding the plaintiff." (Docket No. 116 at 8.) Again, standing alone, a supervisor's failure to "supervise, control, or train" another individual is "not actionable." *See Shehee*, 199 F. 3d at 300.